ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Lockheed Martin Aeronautics Company | ) | ASBCA No. 62209 |
| | ) | |
| Under Contract No. FA8625-07-C-6471 | ) | |

APPEARANCES FOR THE APPELLANT: Stephen J. McBrady, Esq.
Skye Mathieson, Esq.
J. Chris Haile, Esq.
Michelle D. Coleman, Esq.
John Nakoneczny, Esq.
  Crowell & Moring LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
  Air Force Deputy Chief Trial Attorney
Caryl A. Potter III, Esq.
Lawrence M. Anderson, Esq.
Danielle A. Runyan, Esq.
  Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE PAGE ON APPELLANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON "LACHES," OR IN THE
ALTERNATIVE TO STRIKE THE GOVERNMENT'S AFFIRMATIVE DEFENSE

The subject contract required LMA to upgrade 49 C-5 Galaxy aircraft. The parties have filed a series of cross-motions for summary judgment, which largely focus upon the timeliness of the underlying October 15, 2018 claim in the amount of $143,529,290. This claim was asserted by Lockheed Martin Aeronautics Company (LMA, appellant, or contractor) against the Air Force (USAF, Air Force, government, or respondent) for allegedly excessive "over & above" (O&A) work that resulted in greater costs and a cumulative lack of productivity. LMA also moved for partial summary judgment (or in the alternative to strike) the government's affirmative defense of laches (app. mot.). We grant appellant's motion for partial summary judgment on the issue of whether laches remains an allowable affirmative defense.[1]

---

[1] Because we grant partial summary judgment on this issue, it is unnecessary that we address appellant's alternative motion to strike the government's assertion of laches as an affirmative defense.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On April 30, 2007, the Air Force awarded Contract No. FA8625-07-C-6471 for the "Reliability Enhancement and ReEngining Program" (RERP) to LMA. The contractor was to provide a set of upgrades to specified C-5 aircraft. This included the installation of new CF6-80C2 commercial engines and other enhancements to subsystems and major components. This work was done under mostly fixed-price contract line items (CLINs). (R4, tab 3 at 1-13, 28, 73-75)

On October 15, 2018, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109 (CDA) and Federal Acquisition Regulation (FAR) 52.233-1 DISPUTES, LMA submitted a certified claim in the amount of $143,529,290 and requested a final decision (COFD) from a government contracting officer (CO) (R4, tab 2 at 2-3).[2] Appellant's claim alleges that "excessive O&A work changes resulted in an additional, constructive change in the form of cumulative impacts to the performance of the fixed-price RERP efforts" (*id*. at 21). LMA "calculates a total of 428,482 production hours attributable to the cumulative disruptive impacts of O&A changes" in pricing its claim (*id*. at 25).

By correspondence dated December 7, 2018, the CO declined to issue a COFD on LMA's claim of October 15, 2018 (R4, tab 1).

On October 3, 2019, the contractor appealed to the ASBCA on the basis of the government's "deemed denial of its certified claim . . . submitted on 15 October 2018." The Board on October 7, 2019 issued its "Notice of Docketing" and designated the appeal as ASBCA No. 62209.

The government's answer of December 3, 2019 asserted the affirmative defense of laches (answer at 43).

DECISION

*The Parties' Positions*

1. *The Appellant*

On August 17, 2020, LMA filed "Appellant's Motion for Partial Summary Judgment on 'Laches,' or in the Alternative, to Strike Respondent's Affirmative Defense." LMA argues there are no disputed material facts, and that it is entitled to

_____

[2] Where pertinent, the Board adopts the pagination affixed by the parties as part of the Rule 4 file submission.

favorable judgment as a matter of law. In the alternative, appellant seeks to strike the government's affirmative defense of laches. (App. mot. at 1, 4, 7)

LMA contends that although "[l]aches is an equitable doctrine that is appropriate, in some circumstances, where there is no applicable statute of limitations," this defense is unallowable in this appeal. Appellant maintains that "Laches is a 'gap-filling' doctrine that may be applied when there is no statute of limitations, but it is not a cognizable affirmative defense to claims governed by a Congressionally-enacted statute of limitations." The contractor says that because its claim was asserted under the CDA and "Congress specifically enacted a six-year statute of limitations for claims" for this act, this provision "applies to Lockheed Martin's claim, and there is no 'gap' for the doctrine of laches to fill." (App. mot. at 2)

Appellant's argument relies heavily upon the opinion of the United States Supreme Court in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017). LMA asserts that this decision "clarified that the equitable defense of laches cannot be invoked against a legal claim when Congress has statutorily prescribed a reasonable limitations period for bringing such claims." (App. mot. at 4) Appellant points out that Congress amended the CDA by adding the six-year statute of limitations through the Federal Acquisition Streamlining Act of 1994. This amendment applies to all contracts awarded on or after October 1, 1995 and the contract between the government and LMA was awarded on April 30, 2007, bringing it within the six-year submission limitation. Appellant asserts that, in accordance with *SCA Hygiene*, the effect of the CDA's Congressionally-imposed statute of limitations is that the affirmative defense of laches is unavailable against LMA's claim. (App. mot. at 4-6) The contractor contends that, "although *SCA Hygiene* was not a CDA case, the rule against laches [articulated there] is broadly applicable to all legal claims that are subject to a Congressionally-enacted statute of limitations" (*id.* at 6).

2. *The Government*

The government does not raise any disputed material facts in opposing the motion (gov't opp'n at 2). It primarily argues that no tribunal has rendered a decision holding that the CDA bars laches as an affirmative defense to claims made under that Act. The government notes that *SCA Hygiene* was not a CDA case, and contends that the Board should not extend the holding in that case to encompass that statute. It asserts that ASBCA precedent, particularly in *Anis Avasta Constr. Co.*, ASBCA No. 61107, 18-1 BCA ¶ 37,036, is in agreement that the affirmative defense of laches applies to CDA claims. (Gov't opp'n at 4-5)

The government observes that the Board in *Anis Avasta* relied in part upon *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F. 2d 1 (Fed. Cir. 1985) (*see* 18-1

BCA ¶ 37,036 at 180,317).  The government says that *S.E.R.* stands for the proposition that laches remains an appropriate affirmative defense if it is necessary for the tribunal to prevent the injustice of a prejudicially-tardy claim, even where the suit is subject to a statute of limitations.  The government quotes from this decision: "laches cannot ordinarily be invoked as a defense to legal claims where a statute of limitations is normally available to preclude the recovery on stale claims, *unless the offended party has been unmistakably prejudiced by the delay in assertion of the claim*."  (Gov't opp'n at 3 n.1 (citing *S.E.R.*, 759 F. 2d at 8-9) (emphasis in original))

The government also cites FAR 33.203(c) (Applicability) to buttress its position that the CDA's six-year claim submission requirement was not intended to preclude the equitable defense of laches.  It reasons that this FAR provision "preserves all contract claims and defenses of the parties that administrative agency Boards and contracting officers had the authority to consider and decide" prior to the enactment and/or amendment of the CDA, "including the equitable defense of laches against contractor 'equitable adjustment' claims under contract clauses."  (Gov't opp'n at 5)

## *DISCUSSION*

### 1.  *The Standard of Review for Summary Judgment*

Summary judgment is a salutary measure for resolving litigation where there are no disputed material facts and the movant has proven that it is entitled to judgment as a matter of law.  *Mingus Constructors, Inc. v. United States*, 812 F. 2d 1387, 1390 (Fed. Cir. 1987); Federal Rules of Civil Procedure (FED. R. CIV. P.) 56(a).  The Board's duty in evaluating such motions is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Our assessment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits" (*id*. at 252), and we look to FED. R. CIV. P. 56 for guidance in deciding summary judgment motions (Board Rule 7(c)(2)).  The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The government as proponent here bears the burden of proving laches as an affirmative defense.  *See, e.g.*, *Cornetta v. United States*, 851 F. 2d 1372, 1380 (Fed. Cir. 1988) ("the burden of proving prejudice rests with the defendant").  For purposes of the motion, it must demonstrate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing FED. R. CIV. P.

4

56(e)).  As nonmovant, the government must "make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The government cannot rest upon mere denials or conclusory statements, as these are insufficient to withstand summary judgment.  *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F. 2d 831, 836 (Fed. Cir. 1984).

### 2.  *Affirmative Defenses to a Claim*

"Affirmative defenses" can protect a defending party from the consequences of its actions, even if everything alleged in the claim is true.  This remedy is grounded in the notion that equity should be available to avoid suit or ensure a fair result to the one against whom the action was brought, even if the law might otherwise dictate a different result.  *See, e.g.*, *Parkinson v. Dep't of Justice*, 874 F.3d 710, 724 n.9 (Fed. Cir. 2017);[3] *also Wisconsin v. Duluth*, 96 U.S. 379, 383 (1877) ("if [the affirmative defense] is found to be true in point of act, it will preclude any such action by this court as the plaintiff has prayed for.").

The Board has said:

> The Black's Law Dictionary defines an "affirmative defense" as "A response to a plaintiff's claim which attacks the plaintiff's legal right to bring an action, as opposed to attacking the truth of claim."  It further explains that, "In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it."  Black's Law Dictionary 60 (6th ed. 1990).

*United Technologies Corp., Pratt & Whitney Group, Gov't Engines and Space Propulsion*, ASBCA No. 46880 *et al.*, 95-1 BCA ¶ 27,538 at 137,230-31.

---

[3] This note reads in full:

> *See, e.g.*, *Affirmative Defense*, under *Defense*, Black's Law Dictionary (10th ed. 2014) ("A defendant's assertion of facts and argument that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true….  Also termed plea in avoidance; plea in justification.  *Cf.* negative defense; confession and avoidance.").

*Parkinson*, 874 F.3d at 724 n.9.

Board Rule 6(b), which sets forth requirements for the government's pleadings, calls for the answer to include any affirmative defenses. "Although the Federal Rules of Civil Procedure do not apply to the Board as an administrative tribunal, we can look to them for guidance, particularly in areas our rules do not specifically address." *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920. Thus, we look to FED. R. CIV. P. 8(c)(1), which provides that affirmative defenses (including laches) must be stated in a party's response to a pleading.[4] *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1270 (3rd ed. (2021) (discussing FED. R. CIV. P. 8 and affirmative defenses in general)).

### 3. *The Equitable Doctrine of "Laches" as an Affirmative Defense*

The Supreme Court has described laches as "a defense developed by courts of equity" to protect defendants against "unreasonable, prejudicial delay in commencing suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667-68 (2014). The theory of laches, which is derived from the concept of equity and is not predicated upon a statutory time limit, allows a tribunal to dismiss a suit where a party's:

> 'lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence.' *Benedict v. City of New York*, 250 U.S. 321, 328, 39 S. Ct. 476, 478, 63 L.Ed. 1005 [(1919)]. A suit in equity may fail though 'not barred by the act of limitations.' *McKnight v. Taylor*, [42 U.S. 161, 168 (1843)]; *Alsop v. Riker*, 155 U.S. 448, 15 S. Ct. 162, 39 L.Ed. 218 [1894)].
>
> Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced, — an inequity founded upon some change in the condition or relations of the property or the parties.

*Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (further citations omitted).

---

[4] FED. R. CIV. P. 8(c)(1) requires that a party responding to a pleading must "affirmatively state any avoidance or affirmative defense, including: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver."

Prevailing on the defense of laches requires its proponent to furnish "'proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002) (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (further citation omitted)).

The ASBCA has held:

> Laches is an equitable doctrine that denies relief to "one who has unreasonably and inexcusably delayed in the assertion of a claim." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 5 (Fed. Cir. 1985) (quoting *Brundage v. United States*, 504 F.2d 1382, 1384, 205 Ct. Cl. 502 (Ct. Cl. 1974).

*The Boeing Co*., ASBCA No. 54853, 12-1 BCA ¶ 35,054 at 172,197.

4. *The Statute of Limitations under the Contract Disputes Act*

Congress added the six-year statute of limitations to the CDA by the Federal Acquisition Streamlining Act of 1994 (FASA) (Pub. L. No. 103-355, § 2351(a), 108 Stat. 3243, 3322 (1994)).  FASA § 10001(b)(2)(A)(2) provides that amendments:

> [M]ade by this Act shall apply to contracts in effect on October 1, 1995 "to the extent and in the manner prescribed in the final regulations . . . ."  108 Stat. 3404. The final regulations at FAR 33.206(a) state in relevant part:  "This 6-year time period does not apply to contracts awarded prior to October 1, 1995."

*JRS Management*, ASBCA No. 57238, 10-2 BCA ¶ 34,571 at 170,452.

After examining the legislative history of 41 U.S.C. § 7103(a)(4)(A), the Federal Circuit concluded that the CDA's statute of limitations was not a jurisdictional requirement. *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1322 (Fed. Cir. 2014 ("§ 7103 does not have any special characteristic that would warrant making an exception to the general rule that filing deadlines are not jurisdictional.  We conclude that § 7103 is not jurisdictional . . . .").  The court reviewed the requirement that contractor claims must be brought within six years of the accrual of a claim:

> Section 7103(a)(4)(A) states that "[e]ach claim by a contractor against the Federal Government relating to a contract and each claim by the Federal Government against

> a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). A claim accrues as of "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." 48 C.F.R. § 33.201.

*Sikorsky*, 773 F.3d at 1320.

The CDA statute of limitations continues as a time bar to claims that were not presented to the CO within the defined period. *Environmental Safety Consultants, Inc.*, ASBCA No. 58343, 14-1 BCA ¶ 35,681 at 174,666. It remains an affirmative defense before the Board (*see, e.g.*, *Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, slip. op. at 12 (April 29, 2021); *see also* FED. R. CIV. P. 8(c)(1)).

### *Analysis of Appellant's Motion*

### 1. *The Substance of the Government's Affirmative Defense of Laches*

The government's answer details its reasons for seeking to deny LMA the complete six years set forth in 41 U.S.C. § 7103(a)(4)(A) to submit its claim. The government argues that it would be unfairly prejudiced by allowing appellant the full statutory period, and justifies the Board's imposition of a shorter, undefined interval as follows:

> Appellant's unreasonable delay in making its "cumulative impact" claim(s) with respect to unidentified "thousands of MDRs [Manufacturing Deficiency Reports]" and hundreds of thousands of unidentified hours of "O&A work" (e.g., Complaint paragraphs 51, 58, 67 and 134), with the obviously incurable prejudice to Respondent to be able to defend against so many "thousands" of individual MDRs/O&A hours and their alleged "impact on fixed-price CLINs for 21 aircraft in Lots 3-5," is a textbook case of laches precluding Appellant's claim(s) as Respondent asserted in its answer to Complaint paragraph 126 above.

(Answer at 43)

2. *The United States Supreme Court's Decisions in SCA Hygiene and Petrella Preclude the Affirmative Defense of Laches in CDA Appeals*

The government's argument that laches remains a viable affirmative defense is unpersuasive; it ignores the breadth of the Supreme Court's decisions regarding the relationship between federal statutes of limitation and the common law affirmative defense of laches. The government's contention that the holding in *SCA Hygiene* is not relevant to a CDA claim because that case arose from a Patent Act matter disregards the deliberately broad language of this decision. It also fails to recognize the Court's repeated endorsement of *Petrella*, 572 U.S. 663 (2014), which it favorably relied upon throughout (*see, e.g.*, *SCA Hygiene,* 137 S. Ct. at 959-64). In responding to a challenge over whether the ruling in *Petrella* (which dealt with the Copyright Act) extended to a Patent Act issue in *SCA Hygiene*, the Court in the latter decision reiterated the general principle that laches is not an available defense where there is a legislatively-enacted statute of limitations:

> [The Court held in *Petrella*] that laches cannot defeat a damages claim brought within the period prescribed by the Copyright Act's statute of limitations. *Petrella*, 572 U.S., at ----, 135 S. Ct., at 1972-1975. <u>And in so holding, we spoke in broad terms.</u> See *id*., at --- - ---, 134 S. Ct. at 1974 ("<u>[I]n the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief.</u>")

*SCA Hygiene*, 137 S. Ct. at 960 (emphasis added).

The Court in *SCA Hygiene* also emphasized the separate functions of judges and the legislative branch, just as it had in *Petrella* (*see, e.g.*, *SCA Hygiene*, 137 S. Ct. at 960-61). It warned that it is inappropriate for a judge to allow an equitable doctrine such as laches to limit a party's rights where that party complied with a Congressionally-enacted statute of limitations. The Court acknowledged that laches (a judge-made doctrine that arose from equity) and statutes of limitation (enactments of the legislature explicitly circumscribing the period in which a claim can be brought) are both intended to shield those defending against untimely claims. *Id*.

Although the legislative and judicial approaches share the same goal of discouraging stale or overly-late claims, the rubric under which timeliness is established is very dissimilar. Chief among the differences is that tribunals rely on the doctrine of laches to decide on a case-by-case basis whether a particular claim was brought within a reasonable period, whereas legislatures adopt firm temporal limits for every claim brought under a specific law. Tribunals consider whether the party asserting laches was unjustly or unreasonably prejudiced by the timing of the claim,

9

whereas this is not a consideration in assessing whether a statute of limitations has been met.

The Court in *SCA Hygiene* warned against allowing judges to usurp Congressional power by permitting parties continued reliance on laches where the controlling statute set a time limit:

> The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. [*Petrella*], 134 S. Ct. at 1974. As we stressed in *Petrella*, "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id*., at ----, 134 S. Ct., at 1967.

*SCA Hygiene,* 137 S. Ct. at 960.

Although the government correctly observes that the United States Court of Appeals for the Federal Circuit, the ASBCA's appellate body, has not applied *SCA Hygiene* to the CDA or otherwise ruled that laches is not available as an affirmative defense under that act, it is unnecessary that the Board wait for it to do so before ruling on this motion. While it would be preferable if the Federal Circuit had been given the opportunity to previously consider this issue, this Board is ultimately subject to the precedent of the United States Supreme Court and will adhere to its decisions.

We note that the Federal Circuit favorably applied the holdings in *SCA Hygiene* and *Petrella* in litigation outside the Copyright Act and the Patent Act.[5] In *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 981 F.3d 1360 (Fed. Cir. 2020) (*NOVA*), the court held that an advocacy group's "challenge is timely under the six-year statute of limitations provided by 28 U.S.C. § 2401(a) and that Federal Circuit Rule 15(f), establishing a 60-day time limit for bringing [a petition under 38 U.S.C.

---

[5] *But cf. Inserso Corp. v. United States*, 961 F.3d 1343 (Fed. Cir. 2020), a post-award bid protest in which the dissent regarded the "*Blue & Gold* 'Waiver Rule'" cited by the majority as "undermined by the reasoning in *SCA Hygiene*." *Inerso Corp*., 961 F.3d 1352-53. It was Judge Reyna's view that this "rule runs afoul of the separation of powers principle articulated" by the Supreme Court. *Id.* at 1353.

§ 502] is invalid." *Id.* at 1365. The Federal Circuit concluded that local court rules cannot "*either* expand[] *or* limit[] the time to file a claim where a statutory time limit applies." *Id.* at 1384. The court recognized its power under 28 U.S.C. § 2071(a) "to promulgate rules for conducting court business," but said that "'[s]uch rules shall be consistent with Acts of Congress.'" *Id.* (quoting 28 U.S.C. § 2071(a). It found "unavailing" the argument that the holdings in *SCA Hygiene* and *Petrella* should be distinguished "on the ground that they dealt with statutory time limits specific to a particular area of the law." *Id.* at 1385. The court affirmed that "Congress 'kn[o]w[s] how to impose' a more limited statutory time limit on challenges to agency action 'when it [chooses] to do so.'" *Id.* (citations omitted).

We find the government's reliance upon decisions involving laches that were rendered by various tribunals (but pre-date *SCA Hygiene*) is misplaced, as these do not reflect the current status of the law. Nor are we bound by *Anis Avasta*, 18-1 BCA ¶ 37,036 or other ASBCA decisions discussing the doctrine of laches that were rendered after the issuance of *SCA Hygiene*. The parties did not argue nor did the Board consider the effect of that decision (or *Petrella*) when it ruled in those appeals.

3. *FAR 33.203(c), Does Not Preserve Laches as an Affirmative Defense in an Appeal under the Contract Disputes Act*

We are not convinced by the government's unsupported argument that FAR 33.203(c), (Applicability) somehow overrides decisions of the Supreme Court or the dictates of Congress in 41 U.S.C. § 7103(a)(4)(A), or preserves the affirmative defense of laches; *see, e.g.*, FED. R. CIV. P. 56(e) Failing to Properly Support or Address a Fact.

FAR 33.203(c) (Applicability) provides:

> (c) This part applies to all disputes with respect to contracting officer decisions on matters "arising under" or "relating to" a contract. Agency Boards of Contract Appeals (BCAs) authorized under the Disputes statute continue to have all of the authority they possessed before the Disputes statute with respect to disputes arising under a contract, as well as authority to decide disputes relating to a contract. The clause at 52.233-1, Disputes, recognizes the "all disputes" authority established by the Disputes statute and states certain requirements and limitations of the Disputes statute for the guidance of contractors and contracting agencies. The clause is not intended to affect the rights and obligations of the parties as provided by the Disputes statute or to constrain the authority of the

statutory agency BCAs in the handling and deciding of
contractor appeals under the Disputes statute.

48 C.F.R. 33.203(c) (underlining added)

We do not read the FAR's authorization of Boards of Contract Appeals to
"have all of the authority they possessed before the Disputes statute with respect to
disputes arising under a contract, as well as authority to decide disputes relating to a
contract" as the wide-ranging grant of power espoused by the government. Nothing in
FAR 33.203(c) preserves the pre-FASA affirmative defense of laches, and the
government does not substantiate that the regulation supersedes the holdings in *SCA
Hygiene* and *Petrella* that laches is not a cognizable defense where the statute of
limitations is satisfied.

The government's reliance on this regulation to thwart or override rulings of the
Supreme Court is incorrect as a matter of law, and it has not established a disputed
material fact that we would be required to construe in its favor (*see* "*The Standard for
Review for Motions for Summary Judgment," supra*). The government's "conclusory
statements or completely insupportable, specious or conflicting explanations or
excuses will not suffice to raise a genuine issue of material fact." *Range Tech. Corp.*,
ASBCA No. 51953 *et al.*, 04-1 BCA ¶ 32,456 at 160,545 (quoting *Paragon Podiatry
Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993)).

## CONCLUSION

Appellant has demonstrated there are no disputed issues of material fact, and
that it is entitled to judgment as a matter of law. Where "Congress explicitly puts a
limit upon the time for enforcing a right which it created, there is an end of the matter.
The Congressional statute of limitation is definitive." *Holmberg*, 327 U.S. at 395. We
grant LMA's motion for partial summary judgment on the issue of laches, which is not
available to the government as an affirmative defense against the CDA claim brought
by the contractor.

Dated: June 22, 2021

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

12

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62209, Appeal of Lockheed Martin Aeronautics Company, rendered in conformance with the Board's Charter.

Dated:  June 22, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13