**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RICHARD A. DAVIDSON,
        Appellant,

      v.

DEPARTMENT OF JUSTICE,
        Agency.

DOCKET NUMBER
DA-0752-15-0013-I-3

DATE: March 22, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>Amy Armstrong</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was formerly employed by the agency as an Assistant Special Agent in Charge (ASAC) with the San Antonio division of the Federal Bureau of Investigation (FBI). *Davidson v. Department of Justice*, MSPB Docket No. DA-0752-15-0013-I-3, Appeal File (I-3 AF), Tab 15 at 296. On May 22, 2014, the agency proposed his removal based on three charges: misuse of position, interference with an Office of Inspector General (OIG) investigation, and lack of candor. *Id.* at 66-76. On August 22, 2014, the agency sustained the charges and removed the appellant effective that same day. *Id.* at 39-55. The appellant filed a Board appeal disputing the charges. *Davidson v. Department of Justice*, MSPB Docket No. DA-0752-15-0013-I-1, Initial Appeal File (IAF), Tab 2.[3] After holding a hearing, the administrative judge issued an initial decision, sustaining the appellant's removal. I-3 AF, Tab 31, Initial Decision (ID). The

---

[3] The appeal was dismissed without prejudice on two prior occasions, pending the outcome of the appellant's case before the agency's disciplinary review board. IAF, Tab 7; *Davidson v. Department of Justice*, MSPB Docket No. DA-0752-15-0013-I-2, Appeal File, Tab 5.

administrative judge found that the agency proved all three of its charges and that the penalty of removal was reasonable. ID at 3-21.

¶3    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has opposed the appellant's petition. PFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge correctly found that the agency proved its charge of misuse of position.

¶4    In this charge, the agency alleged that the appellant misused his authority as an ASAC "to ensure two FBI employees provided favorable recommendations to personally benefit another FBI employee, in violation of FBI Offense Code 2.8." I-3 AF, Tab 15 at 66. In particular, the agency alleged that the appellant told two special agents, Special Agent 1 (SA1) and Special Agent 2 (SA2), what they should personally say about another special agent, Special Agent 3 (SA3), if contacted to provide a reference for SA3's potential employment at a bank. *Id.* at 69. At the time, SA3 was facing proposed disciplinary action, and, according to the appellant, SA3 had contacted him, expressing concern that SA1 and SA2 might be contacted as references and might tell the bank that SA3 had been fired. *Id.* at 44; ID at 6-7. The appellant then met with SA1 and SA2 in his office. ID at 7. Another official, Supervisory Special Agent 1 (SSA1), also was present.[4] *Id.*

¶5    The administrative judge credited sworn statements of SA1 and SA2 that, during the meeting, the appellant ordered them to tell the bank that SA3 was a "good agent" and "we hope he does not leave" and that any deviation from those statements would result in the agents being called back to the appellant's office to explain their actions. ID at 5, 8. The administrative judge further credited SA1's and SA2's statements that, after sensing their discomfort, the appellant stated that

---

[4] SSA1 was SA1's and SA2's supervisor. ID at 7. The appellant was SSA1's direct supervisor and SA1's and SA2's second-level supervisor. ID at 8, 13.

they could otherwise state that "management believes [SA3] was a good agent and that management hoped he did not leave." *Id.* The administrative judge found that SA1's and SA2's understanding of the appellant's instructions as an order was reasonable given the deciding official's testimony that the agency adheres to strict hierarchical standards and that the appellant testified that he functioned essentially as a Special Agent in Charge. ID at 8. Thus, the administrative judge did not credit the appellant's claim that SA1 and SA2 were under no obligation to comply with his directions. *Id.* She similarly did not credit the appellant's explanation that his intent during the meeting was to protect the agency, SA1, and SA2 from liability in the event SA1 or SA2 disclosed to the bank information protected by the Privacy Act. ID at 9. Instead, she found that the appellant's intent to benefit SA3 was evidenced both by his statements during the meeting and by the fact that he himself gave SA3 a favorable reference. *Id.*

¶6    On review, the appellant contends that the evidence does not reflect that he unequivocally ordered SA1 and SA2 to provide a favorable recommendation because "equivocality permeated the entire dialogue" and it culminated in guidance that SA1 and SA2 refer any inquiries to management. PFR File, Tab 1 at 8. He further reiterates that his intent was to prevent unauthorized disclosure of information protected by the Privacy Act to third parties by employees of the agency. *Id.* at 8-9. However, the administrative judge considered and rejected such arguments. ID at 9. The appellant also asserts that the administrative judge erred in relying on SA1's and SA2's affidavits, which he contends were incomplete and unreliable. PFR File, Tab 1 at 9. We find that the appellant's arguments constitute mere disagreement with the administrative judge's findings and do not provide a basis for reversal. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *see also Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

<u>The administrative judge correctly found that the agency proved its charge that the appellant interfered with an OIG investigation.</u>

¶7     The agency alleged that the appellant violated FBI Offense Code 2.11 when, after speaking with the OIG, he went to SSA1, a subordinate and OIG witness, and had him prepare a statement regarding the appellant's meeting with SA1 and SA2. I-3 AF, Tab 15 at 70. SSA1 prepared a statement and gave it to the appellant, who faxed it to the OIG, prior to both of their OIG interviews. *Id.* at 48. The agency alleged that such actions implied undue influence given the appellant's status as SSA1's supervisor and awareness that concerns about his actions during the meeting with SA1 and SA2 had been raised outside of his division. *Id.* at 71.

¶8     FBI Offense Code 2.11 prohibits an employee from "[t]aking any action to influence, intimidate, impede or otherwise obstruct an administrative matter." I-3 AF, Tab 15 at 70. The administrative judge found that, for purposes of this section, the agency was not required to prove that the appellant's actions in fact influenced or obstructed the investigation, but only that they were taken for the purpose of doing so.[5] ID at 12.

¶9     The administrative judge found that, when the appellant requested that SSA1 provide a statement to him, he was aware that his conduct during the meeting with SA1 and SA2 was at issue, SA1 had raised a complaint about the appellant's conduct outside of the office, he had "lost control" of the situation, and "knew [he] didn't handle it right."[6] ID at 12-13. Thus, the administrative

---

[5] In so finding, the administrative judge relied upon *Parkinson v. Department of Justice*, 815 F.3d 757, 765 (Fed. Cir. 2016), *aff'd in relevant part and rev'd in part by* 874 F.3d 710 (Fed. Cir. 2017) (en banc). This interpretation is consistent with the agency's interpretation, I-3 AF, Tab 15 at 46, and the appellant also does not contend that the agency was required to prove that he actually interfered with or obstructed the OIG investigation.

[6] Although the appellant testified that he was not aware of the OIG investigation at the time he requested that SSA1 prepare a memorandum, ID at 11-12, the record reflects that the OIG complaint was filed on September 13, 2013, SSA1's memorandum prepared at the request of the appellant is dated September 13, 2013, and in his affidavit

judge found that, under the circumstances, the appellant's conduct was an effort to improperly influence SSA1's account of the meeting. ID at 13. She further found that, although SSA1 confirmed that the appellant did not tell him what to write in his memorandum, it is impossible to know if SSA1 would have said something more or different if he had been questioned by the OIG without having first prepared a statement for the appellant, his supervisor. *Id.* Additionally, the administrative judge found that the appellant improperly gained access to SSA1's statement by having him return it to the appellant rather than having SSA1 preserve it in his own files. ID at 13-14.

¶10 On review, the appellant contends that the administrative judge erred in sustaining this charge because the evidence fails to demonstrate that his behavior was calculated to actually obstruct the investigation. PFR File, Tab 1 at 13. The appellant also contends that the administrative judge erred in failing to make a finding as to whether his actions in attempting to influence the investigation were improper. *Id.* at 15-16. In support of his argument, the appellant relies on *Parkinson v. Department of Justice*, 815 F.3d 757, 765 (Fed. Cir. 2016), *aff'd in relevant part and rev'd in part by* 874 F.3d 710 (Fed. Cir. 2017) (en banc). In *Parkinson*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that a showing of impropriety was an implicit requirement to establish a violation of FBI Offense Code 2.11. *Id.* We fail to see how, under the circumstances presented here, the appellant's act of soliciting and obtaining SSA1's statement prior to the OIG investigators could be construed as anything other than improper influence.

¶11 To the extent the appellant also contends that the agency was required to show that his subjective purpose in requesting the memorandum from SSA1 was

_____

prepared as part of the OIG investigation, SSA1 indicated that the appellant requested that he write a memorandum on September 13, 2013, after the appellant spoke to the OIG. I-3 AF, Tab 15 at 205, 226-28. The administrative judge, however, did not make any credibility findings concerning whether the appellant was aware of the OIG investigation when he requested SSA1's statement.

immoral, depraved, or evil as set forth in *Parkinson* and *Arthur Andersen LLP v. United States*, 554 U.S. 696, 705 (2005), PFR File, Tab 1 at 16-17, we find that such a showing is not required to establish a violation of FBI Offense Code 2.11. We do not read the Federal Circuit's decision in *Parkinson* as holding that FBI Offense Code 2.11 requires a showing that the attempted influence was immoral, depraved, or evil. *Parkinson* cited to the Supreme Court's decision in *Arthur Andersen*, in support of its finding that FBI Offense Code 2.11 requires impropriety in the attempted influence, not that the specific requirements for criminal obstruction under 18 U.S.C. § 1512, as set forth in *Andersen*, are applicable to FBI Offense Code 2.11. *See Parkinson*, 815 F.3d at 765 n.3.

The administrative judge properly sustained the lack of candor charge.

¶12     The agency charged the appellant with a lack of candor based on his statements made under oath during the OIG investigation in which he stated that his statements to SA1 and SA2 were not made to benefit SA3 in any way but to warn SA1 and SA2 to prevent them from making unauthorized disclosures and to protect the FBI from civil liabilities. I-3 AF, Tab 15 at 48. The agency also charged him with falsely stating that "at no time [were you] instructing them to make a recommendation, but simply to narrow their comments if contacted by [the bank]." *Id.* Finally, the agency charged the appellant with lack of candor based on his statement under oath that prior to providing a reference for SA3 he "coordinated several times" with the former Special Agent in Charge (SAC) about SA3 in an effort to falsely convey to investigators that he had prior SAC approval for his conduct. *Id.* at 50.

¶13     The administrative judge found that the appellant's statements that he did not intend to benefit SA3, had never taken any actions to benefit SA3 or his employment with the bank, and acted only to protect the interests of the FBI lacked candor based on her prior findings that the appellant intended to benefit SA3 when he instructed SA1 and SA2 to provide a favorable reference for SA3. ID at 16. She further found the appellant's comment, "[a]t no time was I

instructing [SA1 and SA2] to make a recommendation, but simply to narrow their comments if contacted by [the bank]," to lack candor because it was at odds with the sworn affidavits of SA1 and SA2, which she credited over the appellant's testimony. ID at 16-17. Finally, she found that the appellant lacked candor when he stated under oath that he had coordinated with the SAC before he spoke to the bank about SA3 based on a sworn affidavit from the SAC that the appellant contacted him after the appellant spoke with the bank. ID at 17. She found that the appellant's statement implied that he discussed with the SAC providing a reference before one was made, when in fact, the SAC's statement denied that such a discussion occurred. ID at 18. The appellant did not testify regarding his conversation with the SAC, and the administrative judge credited the SAC's affidavit over the appellant's. *Id.*

¶14    On review, the appellant disputes the administrative judge's findings concerning this charge. He contends that she confused knowledge and intent and applied the wrong standard when a lack of candor requires "proof that at the time Appellant characterized his intent in his statement . . . he in fact knew that his characterization of his intent was inaccurate." PFR File, Tab 1 at 9-13. A lack of candor charge requires proof that the appellant knowingly gave incorrect or incomplete information. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). However, lack of candor is a broad and flexible concept "whose contours and elements depend on the particular context and conduct involved." *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002).

¶15    We agree with the administrative judge that the appellant lacked candor in his statements. The administrative judge did not credit the appellant's claim that his actions were only an effort to protect the agency, and SA1 and SA2, from liability. ID at 9. She found that, if the appellant intended only to protect the FBI, SA1, and SA2 from any liability, there would have been no need for him to instruct SA1 and SA2 to tell the bank that SA3 was a "good agent," "we hope he

does not leave," or that "management believes [SA3] was a good agent and that management hoped he did not leave." ID at 9. Thus, we agree that the appellant knowingly gave incorrect information concerning the reasons for his statements during the meeting. Further, the appellant's statement that "I have never taken any actions to benefit [SA3] or his employment with the bank" is plainly false because, as noted in his affidavit, the appellant provided a positive reference to the bank on behalf of SA3. I-3 AF, Tab 15 at 276, 297. We also agree that the appellant's statement that he coordinated with the SAC several times prior to his contact with the bank was misleading and suggests that he had approval for his actions. Accordingly, we find that the administrative judge properly sustained the charge.

<u>The administrative judge properly found that the penalty of removal was within the tolerable limits of reasonableness.</u>

¶16    Regarding the appropriateness of the penalty, the appellant argues that a 30-day suspension is the maximum reasonable penalty, given his contentions that the agency failed to prove its charges of lack of candor and interference with an investigation. PFR File, Tab 1 at 4. However, as set forth above, we affirm the administrative judge's findings that the agency proved all three of its charges.

¶17    In determining an appropriate penalty, an agency must review relevant mitigating factors, also known as the *Douglas* factors pursuant to *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). The Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *See Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013). Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

¶18    Here, the administrative judge deferred to the agency's decision to remove the appellant after finding that the deciding official considered the relevant *Douglas* factors, including the nature and seriousness of the offense, the

appellant's supervisory position, his prior discipline for two prior instances of misusing his official position, his potential for rehabilitation, his length of service, and his favorable performance ratings.  ID at 20.  We agree that deference was appropriate here.  In arguing otherwise, the appellant relies on *Portner v. Department of Justice*, 119 M.S.P.R. 365 (2013), *overruled in part by Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶¶ 15, 17.  PFR File, Tab 1 at 6-7. Although the appellant asserts that the circumstances here are similar to those in *Portner*, 119 M.S.P.R. 365, in which the Board mitigated the appellant's removal to a 45-day suspension, we find the facts of *Portner* to be distinguishable.  For example, *Portner* involved different charges of unauthorized use of a Government vehicle and making false statements.  *See Singh*, 2022 MSPB 15, ¶¶ 15, 17 (overruling *Portner* to the extent the Board held that the disparate penalty analysis should extend beyond the same or similar offense).  Moreover, unlike the present case, in *Portner*, the Board found that the deciding official failed to weigh all of the *Douglas* factors, including the appellant's potential for rehabilitation. Under the circumstances presented here, we agree with the administrative judge that the penalty of removal is within the tolerable limits of reasonableness.

¶19    Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.